```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3   ---------------------------x
     UNITED STATES OF AMERICA   :   Criminal Action No.:
 4                              :   1:17-cr-270-4
         versus                 :
 5                              :   Thursday, April 4, 2024
     UMAR FAROOQ CHAUDHRY,      :   Alexandria, Virginia
 6                              :
                 Defendant.     :   Pages 1-19
 7   ---------------------------x

 8        The above-entitled motions hearing was heard before
     the Honorable Leonie M. Brinkema, United States District
 9   Judge.  This proceeding commenced at 10:00 a.m.

10                     A P P E A R A N C E S:

11   FOR THE GOVERNMENT:    JOHN GIBBS, ESQUIRE
                            OFFICE OF THE UNITED STATES ATTORNEY
12                          2100 Jamieson Avenue
                            Alexandria, Virginia  22314
13                          (703) 299-3700

14                          JOHN CELLA, ESQUIRE
                            UNITED STATES DEPARTMENT OF JUSTICE
15                          950 Pennsylvania Avenue, NW
                            Washington, D.C.  20530
16                          (202) 514-2000

17   FOR THE DEFENDANT:     GEREMY KAMENS, ESQUIRE
                            OFFICE OF THE FEDERAL PUBLIC DEFENDER
18                          1650 King Street
                            Suite 500
19                          Alexandria, Virginia  22314
                            (703) 600-0800
20
     COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
21                          Official Court Reporter
                            United States District Court
22                          401 Courthouse Square
                            Alexandria, Virginia  22314
23                          (571) 298-1649
                            S.AustinReporting@gmail.com
24

25        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
                                                               1
```

```
                    P R O C E E D I N G S
```

1         P R O C E E D I N G S

2         THE DEPUTY CLERK:  Criminal Case Number 1:17-cr-270-4, United States versus Umar Farooq Chaudhry.

        Counsel, will you please note your appearances for the record.

        MR. GIBBS:  Good morning, Your Honor.  John Gibbs on behalf of the United States.  I also have John Cella, who's from the National Security Division, and Dan Abrams, who's from the FBI.

        THE COURT:  Good morning.

        MR. GIBBS:  Good morning.

        MR. KAMENS:  Good morning, Your Honor. Geremy Kamens on behalf of Mr. Chaudhry, who is present.

        THE COURT:  All right.  And this is your motion to dismiss for a speedy trial violation.

        The case has been fully briefed.  Is there anything you want to add to your papers?

        MR. KAMENS:  Just briefly, Your Honor, and that is a short timeline, and I'll submit one exhibit.

        Mr. Chaudhry was arrested in Pakistan on December 6th of 2009.  On December 15th of 2009, a Pakistani official, the director general within the Ministry of the Interior, advised that the government of Pakistan will want the U.S. government to follow the formal extradition process

2

1  and further advised that it may take a bit of time to
2  arrange for their extradition, deportation, repatriation,
3  and, as such, the U.S. government should initiate a formal
4  request soon.
5      The U.S. government did not submit an extradition
6  request to Pakistan until over a decade later in November of
7  2020.  In the interim, the U.S. government, on January 15th
8  of 2010, sent a diplomatic note requesting transfer by
9  deportation, expulsion or other lawful means.  On June 5th
10 or 6th of 2010, the U.S. ambassador met with -- to Pakistan,
11 met with the Pakistani interior minister and asked for a
12 return.  And then on June 23rd, the legal attaché sent a
13 letter to the Pakistani minister of interior reiterating
14 U.S. interest in custody at the earliest opportunity.  And
15 that's it.
16     The requests by the government in this case for
17 Pakistan to deport a dual national, someone who was a
18 Pakistani citizen, was entirely futile, and it was not a
19 serious effort to obtain Mr. Chaudhry's return.  It is as if
20 a foreign government would ask the United States to deport a
21 U.S. citizen.  That is not a serious request.  The only
22 effective means here was asking for extradition, which the
23 government did not do for a decade.  And I'll submit as an
24 exhibit Defendant's Exhibit 1, which is the Bates Number FBI
25 530080, which has the information from the Pakistani

3

1  government.

2  Under the circumstances, Your Honor, given that
3  the government did not act with reasonable diligence,
4  prejudice is presumed. We're not required to provide a
5  demonstration of actual prejudice. The time period far
6  exceeds the time period that results in presumptive
7  prejudice, so we're talking about over a decade. And given
8  the government's lack of a serious effort to obtain
9  Mr. Chaudhry's return, the Court has no other relief option
10 but to grant the motion. Thank you.

11  THE COURT: All right. Mr. Gibbs.

12  MR. GIBBS: Thank you, Judge.

13  Your Honor, I'd like to go back through a brief
14 timeline as well because I think it's important. And as I
15 go through it, I think the key point here is the U.S.
16 government and Pakistan are allies, they have treaties
17 between one another including a specific extradition treaty.
18 And the Untied States --

19  THE COURT: I'm sorry. That treaty, as I
20 understand it, does have a provision that if there are
21 criminal charges in the receiving country, extradition is
22 delayed until the country has resolved those charges.

23  MR. GIBBS: That's absolutely correct, Judge.
24 And, in fact, the treaty language is very forceful. It says
25 under those circumstances where somebody's been charged and

4

1   is subject to prosecution, his extradition shall be deferred
2   until a conclusion of the trial and the full execution of
3   any punishment awarded to him, which is what happened in
4   this case.
5          So -- and, in fact, as Jeffrey Olson stated in his
6   affidavit -- and I'm quoting here from paragraph 30 -- he
7   said, as the treaty -- the extradition treaty required that
8   the full execution of any punishment be completed in
9   Pakistan, and there being no prison transfer treaty in place
10  between the United States and Pakistan, the United States
11  was obliged to wait until the defendants had completed the
12  Pakistani prison sentence they were given.  So I think Your
13  Honor has it exactly right.
14         The only way that the U.S. government could
15  surmount that obstacle was to convince the Pakistani
16  government not to prosecute these defendants, but instead to
17  hand them over.  And as we pointed out in our pleading, the
18  U.S. government, at the very highest level, all the way up
19  to the ambassador, tried to convince Pakistan not to
20  prosecute these defendants, but once Pakistan chose to do
21  that, the U.S. government had no further recourse, and it
22  would have been futile to seek to extradite any of these
23  defendants given the treaty and the fact that Pakistan had
24  decided to proceed as they did.
25         THE COURT:  And is there any evidence in the

1  record that Pakistan has, in the past, agreed to extradite
2  to the United States an individual who was under Pakistani
3  criminal proceedings?
4         MR. GIBBS: Not that I'm aware of, Judge. And I
5  think the -- you know, the most knowledge I have on that is
6  from the Olson affidavit, and I think he pointed out
7  there --
8         THE COURT: There was one instance in which that
9  might have happened.
10         MR. GIBBS: I don't know that it was somebody who
11  was -- I'm not aware of anyone who was currently under
12  prosecution in Pakistan being extradited. I think the way
13  it proceeded in this case is the way Pakistan handles it.
14  If they choose to prosecute someone in their country under
15  their laws, you know, as a sovereign nation, they can do
16  that, and the United States or some other nation simply has
17  to wait. I think what the Olson affidavit pointed out is
18  just how difficult and how rare extraditions from Pakistan
19  are.
20         I think, according to the affidavit, from 2010 to
21  2021, there had been two successful extraditions, and
22  Mr. Chaudhry made the third. But, again, we only got
23  Mr. Chaudhry after he had completed his sentence, after he
24  had -- you know, we had submitted a formal extradition
25  package. But even then -- and I think this is the important

6

1    point, and this is what the defense has glossed over here --
2    we didn't get him until he finally consented to be
3    extradited back to the United States.  He was fighting
4    extradition for about a year in Pakistan, and we had not
5    been successful in getting him back.  And it was only after
6    two of his co-defendants had pled guilty to no jail
7    sentences that he finally agreed to return.  And I've got
8    the chronology because I think it's important.
9           You know, the U.S. government was making all
10   reasonable steps to get Mr. Chaudhry, and we had actually
11   moved the Court to appoint counsel for him in 2019 after he
12   was indicted.  And that was -- the indictment was filed on
13   November 16th of 2017.  We made a motion on November 22nd,
14   2019 to appoint counsel, the PDs were appointed to represent
15   him.  The FBI informed the families of all five defendants
16   of the charges in September of 2019.  And then it was on
17   June 22nd, 2020 that Pakistan formally requested extradition
18   documents for just Chaudhry and Khan.  The other defendants
19   were already here or on their way back.  On October 22nd --
20   27th, 2020, the legate advised that it was working with the
21   Ministry of the Interior of Pakistan to petition the local
22   court to lift the order prohibiting the transfer of any of
23   the five defendants.  And then legate advised that Chaudhry
24   was arrested on August 17th, 2022.  But Chaudhry fought his
25   extradition from then on.

7

1        And, again, the motion that the defense makes
2   would seem to argue that all he wanted in this case was to
3   return to the United States quickly and promptly to face
4   these charges.  But if we had gotten him in 2009 or 2010, he
5   would have been facing significant jail time here in the
6   United States, but it was only after he realized that he was
7   facing no jail time that he consented to return.  And, in
8   fact, as early as June of 2020, Chaudhry's attorney told the
9   U.S. government he would likely contest his extradition for
10  Pakistan.  On August 17th, 2020, he confirmed that.  And
11  there were approximately seven hearings in Pakistan where
12  Mr. Chaudhry contested his extradition.  And while that was
13  going on, on April 21st, 2023, the U.S. government filed a
14  motion agreeing to no jail time for Minni and Zamzam here in
15  the U.S.
16       Zamzam pled guilty on April 26th, 2023, and then a
17  couple months later, on July 5th of 2023, now knowing that
18  he wasn't going to be facing any jail time, Chaudhry finally
19  agreed to waive extradition and return to the United States,
20  and it still took a number of months to get him.
21       So, Judge, this notion that the defendant, all he
22  wanted in this case was to return here to face the charges
23  in the U.S., I think is belied by all the evidence in the
24  case.
25       THE COURT:  Well, you also point out that even in

```
 1   this case after the arraignment in December, the Speedy
 2   Trial Act was then again waived, right, because --
 3             MR. GIBBS:  Correct.
 4             THE COURT:  -- there was a finding that this was a
 5   complex case.  So that's one more instance of somebody
 6   indicating that a speedy resolution was not something that
 7   he necessarily wanted.
 8             MR. GIBBS:  Exactly, Judge.
 9             And I think it's very obvious that the Court is
10   very familiar with the pleadings in this case and the
11   attachments, so unless there's any other specific questions
12   or any other specific issues that the Court wants me to
13   address, it's pretty clear that you've got a very strong
14   grasp of the record here.
15             THE COURT:  Okay.
16             MR. GIBBS:  And we would just urge the Court to
17   deny the speedy trial motion -- you know, the motion that
18   speedy trial has been violated in this case.  We would argue
19   forcefully it has not been violated.  The government went to
20   great lengths to attempt to get this and the other
21   defendants.  Extradition from Pakistan is difficult.  We
22   still don't have Mr. Khan and it's been a number of years
23   and I'm not sure that we will ever get him.  So --
24             THE COURT:  And is there a -- you do have a formal
25   extradition request filed for Khan?
```

9

1      MR. GIBBS: We do. And my understanding is he is
2 not in custody in Pakistan, which I think is part of the
3 difficulty. I don't know that he's been located or how --
4 how much effort the Pakistani government has made to locate
5 him.
6      But, yes, the -- we have filed -- you know, at the
7 request of the Pakistani government, as soon as they asked
8 for an extradition request, we filed it. My
9 understanding -- and I've been in touch with OI -- they're
10 still active. Obviously the one for Mr. Chaudhry has been
11 satisfied, and we're still awaiting the one for Mr. Khan.
12      THE COURT: All right.
13      MR. GIBBS: Thank you, Judge.
14      MR. KAMENS: Just three points, Your Honor.
15      First, the government says that Mr. Chaudhry did
16 not make any effort to try to come back to the United States
17 or negotiate waiving a challenge to the extradition before
18 Mr. Zamzam was sentenced to no time, and that's not
19 accurate.
20      The Court actually asked at Mr. Zamzam's plea
21 hearing whether Mr. Chaudhry had made any effort to waive
22 extradition, and so after that, I wrote to Mr. Gibbs, my
23 friend, and said, in light of Judge Brinkema's question in
24 court this morning at Mr. Zamzam's plea hearing about
25 whether Mr. Chaudhry could waive extradition, I'm writing to

```
 1   document that we have discussed the possibility of
 2   Mr. Chaudhry waiving extradition in return for his ability
 3   to return to the United States without being in handcuffs or
 4   detained while he is in transit.
 5           We had been involved in those discussions.  The
 6   government said that was not a possibility.  And so it is
 7   not as if this is -- Mr. Chaudhry was not interested in
 8   coming back to the United States before he learned of the
 9   results of Mr. Zamzam and Mr. Minni's cases.  We had been
10   discussing that.
11           The second point that the Court read --
12           THE COURT:  But let me stop for a second, though.
13           But the government has cited to the fact that
14   certainly early on in your representation of the defendant,
15   he communicated with you that he did not want to be
16   extradited; is that not correct?
17           MR. KAMENS:  Well, I did not have communication
18   directly with Mr. Chaudhry when he was imprisoned, so I was
19   communicating with other members of the family, and so I was
20   expressing what I anticipated would be the position in
21   Pakistan; however, I did ask the government if there was a
22   way for him to return to the United States outside of
23   handcuffs or being detained.  So that is also something that
24   I had discussed with the family but not directly with
25   Mr. Chaudhry.  So --
```

11

1           THE COURT:  But there were seven -- there were
2  multiple hearings in Pakistan concerning the extradition;
3  right?
4           MR. KAMENS:  Absolutely.
5           And just to back up.  We're not challenging the
6  government's diligence once they finally filed the
7  extradition request.  The Court can eliminate all of the
8  time after November of 2020 when the government finally
9  submitted their extradition request to Pakistan.  But it's
10 not as if the government gets to satisfy the speedy trial
11 constitutional requirement by suddenly, ten years later,
12 acting with reasonable diligence.
13          The inquiry is, is there a lag, or is there a time
14 period between accusation and trial that is attributable to
15 the government based upon its lack of reasonable diligence.
16 And under the circumstances here, we take no issue once the
17 government submitted a formal request in November of 2020.
18 All of that time is irrelevant to the inquiry.  The question
19 for the Court is, is there initially a threshold period of
20 time that triggers the *Barker v. Wingo* inquiry.  And
21 everybody agrees that there is.
22          THE COURT:  All right.
23          MR. KAMENS:  The second is, did the government act
24 with reasonable diligence.  And the government is pointing
25 to all of the efforts that it made after it filed the

12

1  extradition request in November of 2020, as well as a few
2  letters from basically 2010.  But that is not sufficient.
3              The Court pointed -- I want to get to this point.
4  The Court pointed to the treaty, Article IV of the
5  extradition treaty, which is standard language in many, many
6  extradition treaties.  And the Court needs to understand
7  that that provision does not become in effect until the
8  extradition proceedings are concluded and an individual is
9  determined to be subject to the extradition request.  It
10 doesn't, in any way, delay the government's ability to file
11 and seek extradition, nor is Pakistan required to invoke
12 that provision.  And we submitted to the Court a case in
13 which the United States in an identical circumstance
14 declined to invoke that provision and allowed a U.S. citizen
15 to be extradited to face charges in another country
16 notwithstanding the existence of that provision.
17             The point is that the fact that another country
18 may rebuff the United States' request for extradition does
19 not obviate the responsibility of the government to make the
20 request.  It goes back to *Smith v. Hooey,* the Supreme Court
21 case in which the Court made that specific observation.  The
22 government has to act with reasonable diligence, and part of
23 that is making a serious effort to obtain the defendant and
24 not to assume that that serious effort is going to be
25 declined by the other country.

1                The last point I'd make, Your Honor, is with
2     respect to the Speedy Trial Act.  The Court had already
3     certified this case as complex.  We agreed to extend the
4     trial deadline for a few weeks.  That, in no way, obviates
5     the violation of the speedy trial Constitutional right from
6     the previous decade.  And so it's certainly something that
7     the Court could take into account in a case where the
8     defendant is saying, look at all of this time between the
9     formal accusation and trial.  And part of the time that the
10    defendant is challenging are times where the defendant
11    agreed to extend the trial date.  But we're not asking the
12    Court to look at any date past November of 2020; we're
13    looking at the formal accusation from December of 2009 until
14    that period, and the government didn't act with reasonable
15    diligence.
16               THE COURT:  Well, it's an unfortunate case for
17    many reasons, but there's no question in my mind that the
18    defendant is not able to meet the *Barker v. Wingo* factors.
19    And I do find on this record that the government did act in
20    a diligent and appropriate fashion in trying to get all five
21    of the defendants back to the United States.
22               Certainly one cannot say in my view that a
23    government is not diligent when it -- the highest
24    representative of the government in the foreign country,
25    that is the ambassador, is, himself, meeting with a

14

1   similarly highly-placed person in the foreign country to try
2   to get the American citizens returned.
3           There's plenty of communication between the people
4   in the embassy, and as I said, going all the way up to the
5   ambassador to try to get these men returned to the United
6   States.  And Pakistani justice is much faster than the EDVA.
7   I mean, these men were charged within only a few months of
8   these requests being made.  And so --
9           MR. KAMENS:  If I could interject.
10          THE COURT:  Yeah.
11          MR. KAMENS:  To be fair, the evidence was
12  fraudulent and false, but I understand the Court's point.
13          THE COURT:  Well, regardless of that, you can't --
14  this is not a habeas case, you know.  The Pakistani
15  authorities did what they did, and we can't control that.
16          There's no evidence in this record from what I've
17  seen that there was some sort of collusion between the
18  Pakistani authorities and American authorities.
19          MR. KAMENS:  And we don't allege that.
20          THE COURT:  All right.  So you've got a foreign
21  country that -- and also, in your client's case, he's a dual
22  citizen.  So he actually is a Pakistani citizen, which
23  means, you know, they were looking at one of their own
24  citizens, and they charged him very quickly with criminal
25  offenses, and they adjudicated them very quickly, and they

15

1  sentenced him.  I mean, you talk about a speedy trial
2  violation.  That was almost too fast, you know, but that was
3  what happened.
4          And given the fact that there is not a significant
5  record of successful extraditions from Pakistan, and given
6  the unique facts of this case, I think the government did
7  make reasonable and diligent efforts to get these men
8  returned quickly.  But once the Pakistani -- and I've also
9  looked at a matter under seal, and I will tell you, I mean,
10 once they dug their heels in, they weren't budging.  And so
11 although the length of delay is certainly problematic, I
12 don't think it's at the U.S. government's fault.  This is as
13 a result of decisions made by the Pakistani government, and
14 so the government was not remiss in its diligent efforts to
15 get the men back.
16         And in terms of the other three *Barker v. Wingo*
17 factors, again, I think there is justification for the
18 delay.  I think that the defendant's assertion of rights is
19 problematic because, you know, as soon as he was released
20 from Pakistani custody, you know, there's this one-year gap.
21 I don't know whether he was in hiding or what, but, I mean,
22 he -- and he must have known at that point because there
23 were communications going back and forth with at least
24 family members.
25         MR. KAMENS:  And just to be clear and for the

1  record --

2          THE COURT:  Yeah.

3          MR. KAMENS:  -- he was not in custody at that
4  point; he was released from prison living with family
5  members in Pakistan.  The government subsequently submitted
6  the extradition request, and Pakistan said in order to
7  initiate the extradition, the defendant needs to be
8  rearrested.

9          THE COURT:  Right.

10         MR. KAMENS:  So approximately a year later,
11 August, I think, of '22, he was arrested and then released
12 subsequently on bond again.

13         THE COURT:  But there is that delay.  And I don't
14 know -- and this is not in the record -- whether in Pakistan
15 one can self-surrender the way you can in the United States.
16 I mean, you know yourself, if you have a client and you hear
17 there's an arrest warrant our for the client, you can walk
18 the client into the courthouse and turn yourself in.

19         But, I mean, there was that delay.  Again, that's
20 not the time period you're focusing on, but I'm just saying
21 that that's -- you know, it's problematic whether the
22 defendant really was interested in coming back here.

23         But lastly, I don't see the argument on prejudice
24 in this case.  The defendant -- I'm assuming the government
25 is not penalizing your client for having, you know, invoked

17

```
 1   his right to file this motion.  The offer that they've made
 2   to all the other defendants was, you know, no sentence of
 3   any time.  And whether the case is going to go to trial or
 4   whether that plea is going to be offered, that's another
 5   issue.
 6            But I don't find in this case the type of
 7   prejudice that normally is associated with a violation of
 8   the Speedy Trial Act, that is that evidence is lost, that
 9   memories are somehow weakened, that sort of thing.  We don't
10   have that here because, at least the government's position
11   in the past has been there will be no trial, they'll agree
12   to a very, very, you know, generous disposition.
13            So, for all those reasons, I'm going to deny the
14   motion, and this case is set for trial.  If it's going to be
15   resolved, I need to let you know that there are times when
16   I'm not going to be available.  So if you're going to try to
17   resolve this, you need to get with my chambers and get a
18   date on the calendar.  All right.  I didn't bring my
19   calendar with me today.  All right.
20            MR. KAMENS:  Understood, Your Honor.
21            MR. GIBBS:  Understood, Judge.
22            THE COURT:  All right.  Is there anything further
23   on this case?
24            MR. GIBBS:  Not from the government, Your Honor.
25   Thank you.
```

```
 1              MR. KAMENS:  Nothing further, Your Honor.
 2              THE COURT:  All right.  Very good.  We'll recess
 3   court for the day.
 4              (Proceedings adjourned at 10:23 a.m.)
 5              -----------------------------------
 6   I certify that the foregoing is a true and accurate
 7   transcription of my stenographic notes.
 8
 9                          _____Stephanie Austin_____
10                          Stephanie M. Austin, RPR, CRR
```