IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:17cr270-4(LMB) |
| | ) | |
| UMAR FAROOQ CHAUDHRY, | ) | |
| | ) | |
| Defendant. | ) | |

## **UMAR FAROOQ CHAUDHRY'S POSITION ON SENTENCING**

By 2019, after spending almost ten years in Pakistani prisons, Umar Farooq Chaudhry was described by his father Khalid Chaudhry as "emotionally broken." Arrested by Pakistani authorities in December 2009, Umar was first detained at a local detention facility in Sargotha, Pakistan. Following a conviction for conspiring to attack Pakistani military facilities, Umar was imprisoned for five years at Faisalabad Central Jail. By 2019, Umar had been incarcerated for over four years at a high security prison in Sahiwal, Pakistan, reserved for inmates convicted of terrorist offenses, where he was held in solitary confinement in an 8 by 6 foot cell for 23 hours a day, and handcuffed during the remaining hour outside of his cell.

Umar's horrific experiences during the decade that he spent in prison in Pakistan are undoubtedly a principal reason that the United States and Umar have jointly recommended that the Court impose a sentence of no more than time-served, followed by a 20-year term of supervised release — and the government recommended similar sentences in the cases of Umar's similarly-situated co-defendants, Ramy Said Zamzam and Ahmed Ameer Minni. But it is not the whole story.

Umar was a pawn in a much larger narrative, first when he was seduced by slick internet propaganda videos to believe that he was obligated to go to Afghanistan to help oppressed Muslims – and potentially fight against the United States – and later when he was wrongly accused and convicted of plotting to attack Pakistani military installations in Pakistan.

Now 39 years old, married, the father of a five-month-old daughter, and working in his parents' computer store, Umar is optimistic about his future.



His only wish is to honor his parents, live a quiet law-abiding life in this country with his family, and he never wants to return to Pakistan again.

## I.    <u>Background History and Characteristics</u>

Born in Pakistan in 1985, Umar emigrated with his parents and three brothers to the United States when he was 6, and subsequently became a naturalized citizen.

PSR ¶ 81. His father described him as "an obedient child [who] never gave him any issues," *id.* ¶ 82, and who remains in a close relationship with his parents (pictured below in their computer store):



While in high school, Umar was always a good student, a member of the National Honor Society, and participated as a member of his high school tennis team. *Id.*

Umar is also soft-spoken, thoughtful, and sensitive; one of his closest high-school friends described him in 2009 as timid and "easily manipulated by others to do things that he usually wouldn't do on his own."[1] Although he was raised in a Muslim household, Umar was not particularly religious in high school, and neither were his close high school friends, Aman Yemer, Ahmed Minni, Waqar Khan, and Ramy Zamzam. *Id.*

After graduating from high school, Umar and his friends became much more religious, and began to regularly attend a local mosque and Muslim youth group meetings. From 2003 until 2005, Umar also attended Northern Virginia Community

---

[1] FBI-2107.

College, and then transferred to George Mason University, where he made the Dean's List from the Fall of 2007 until the Spring of 2009.

Umar's years in college coincided with the United States' deepening involvement in armed conflicts in Iraq and Afghanistan. In 2009, Umar's high school friend Ahmed Minni first recruited Aman Yemer and Waqar Khan to leave their families and travel to Afghanistan to wage jihad and help oppressed Muslims. Those three then approached Umar, and after three to five days, Umar agreed to join them. The four then recruited Ramy Zamzam. As noted in Umar's statement accepting responsibility, Umar fully admits, and deeply regrets, engaging in this conspiracy and violating the material support statute. PSR ¶ 60.

## II.    **False Pakistani Prosecution**

At the same time that Umar and his friends were conspiring in secret to travel to Afghanistan with the vague objective of assisting oppressed Muslims – albeit with the knowledge that this assistance may well involve fighting against United States soldiers there – the United States was also criticizing Pakistan's intelligence service for supporting terrorist "attacks in Afghanistan against Afghan government, ISAF, and Indian targets." Thomas Joscelyn, *Admiral Mullen: Pakistani ISI Sponsoring Haqqani attacks*, Long War Journal (September 22, 2011) (describing leaked 2008 State Department cable detailing US accusations against ISI).[2] Why would Pakistan – ostensibly a U.S. ally – support terrorist groups attacking the Afghan government

---

[2] Available at:
https://www.longwarjournal.org/archives/2011/09/admiral_mullen_pakis.php (last visited Aug. 7, 2024).

that was also supported by the United States? The answer has to do with India. "[T]he way Pakistan sees it, ensuring the Afghan Taliban a prominent place in the post-U.S. Afghanistan landscape prevents India from building a powerful alliance with Kabul." Alex Rodriguez, *Cables Reveal U.S. Misgivings About Pakistan*, L.A. Times (Dec. 2, 2010).[3] In other words, anti-Indian terrorist groups like Jaish-e-Muhammad furthered Pakistan's interest in destabilizing the U.S.-backed Afghan government and supporting the Taliban, to avoid the establishment of a pro-Indian government on Pakistan's western border.

Faced with escalating criticism from the United States regarding its support of anti-Indian terrorist groups like Jaish-e-Muhammad and Lashkar-e-Tayyiba, the ISI recognized that the arrest of Umar and his friends in Pakistan could be used as propaganda to demonstrate that *United States citizens* had traveled to Pakistan to attack *Pakistani military targets. See* Declaration of Khalid Farooq Chaudhry 1-3 (attached as Exhibit 1). Indeed, the prosecution in Pakistan was widely reported by local Pakistani news outlets as evidence of U.S. aggression and interference in domestic Pakistani affairs. *Id.*

The ISI's interest in countering U.S. criticism explains why the Pakistani prosecution was premised on the baseless claim that Umar and his co-defendants conspired to engage in terrorist attacks at a Pakistani nuclear power plant and Pakistani air force bases. Def. Yemer's Mot. Emergency Relief (ECF 29) Attachment

---

[3] Available at: https://www.latimes.com/archives/la-xpm-2010-dec-02-la-fg-pakistan-warning-20101203-story.html (last visited Aug. 7, 2024).

1 (Pakistani judgment of conviction from court in Sargodha, Pakistan) at 45, 57. Indeed, the U.S. government has never contested that Umar's prosecution in Pakistan, and his ten years of imprisonment, were based on a false charge and false evidence.

None of that changes the fact that Umar violated United States law by agreeing with his friends to travel to Afghanistan for the purpose of waging jihad. But it helps to explain why he and his friends were treated so harshly in Pakistan, and underscores that the suffering each endured as a result of spending more than a decade in Pakistani prison was both unnecessary and unjust.

### III. Statutory Sentencing Factors and U.S. Sentencing Guidelines

Congress directed the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing based on the statutory factors laid out in 18 U.S.C. § 3553(a). As the Court well knows, those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

In this case, the aberrant nature of the offense, Umar's history and characteristics, the absence of quantifiable assistance provided to the designated terrorist group,[4] the sentences of time-served imposed in the cases of two co-defendants, and the harshness of the imprisonment that Umar endured for over a decade in Pakistan – justified or not – as a result of his decision to travel to Pakistan, all weigh in favor of imposing the jointly recommended sentence of time-served, followed by 20 years of supervised release.

To be sure, pursuant to the U.S. Sentencing Guidelines, the advisory sentencing range is 180 months based upon the applicable statutory maximum, an adjusted offense level of 35, and a criminal history category of VI, based upon U.S.S.G. § 2M5.3 and the terrorism enhancement in § 3A1.4. The advisory range set forth in the Guidelines does not deserve significant weight in this case.

But for the terrorism enhancement, the applicable guideline range would be 46 to 57 months based upon an adjusted offense level of 23 and a criminal history category of I. It is apparent, therefore, that the terrorism enhancement "'takes a wrecking ball' to the initial Guidelines range" by "both increasing the offense level at

---

[4] Umar indisputably conspired and attempted to travel to Afghanistan in 2009 to participate in the conflict there. But he failed. And an attempt – or a conspiracy that does not accomplish the goal of the conspiracy -- does not result in the same harms associated with a completed offense. For this reason, it is "generally recognized that attempts are less serious than completed crimes." *Solem v. Helm*, 463 U.S. 277, 293 (1983); *see also* U.S.S.G. § 2X1.1. Indeed, sentences for an attempt are typically more lenient than sentences imposed for a completed offense. *See* George P. Fletcher, Rethinking Criminal Law § 6.6, at 474 (Oxford Univ. Press 2000) ("The consensus of Western legal thought is to punish attempts less severely than consummate offenses.").

least 12 levels and elevating the defendant to the highest Criminal History Category, irrespective of his or her actual criminal history." *United States v. Jumaev*, 2018 WL 3490886, at *5 (D. Colo. July 18, 2018), *aff'd*, 20 F.4th 518 (10th Cir. 2021). "This means that a defendant in a § 2339B case will usually face a range well in excess of the statutory maximum [], regardless of what he specifically did and regardless of whether he has no prior record or a terrible one." *United States v. Dais*, 482 F. Supp. 3d 800, 802 (E.D. Wis. 2020). As such, "it recommends sentences near or above the statutory maximum even in mine run cases….[which] is contrary to the purposes of sentencing in 18 U.S.C. § 3553(a), including the notion that sentences should be individualized and proportionate, and that we should distinguish between the worst offenders and those who are less dangerous." *Id.*

Moreover, the draconian punishment recommended as a result of the application of the terrorism enhancement was not devised through analysis of "empirical evidence." *Id.* at 803. Because the enhancement was not the result of "the Sentencing Commission's exercise of its characteristic institutional role," it thus warrants "less respect." *Id.* at 803.

Finally, even apart from the sentences of time-served imposed upon Umar's similarly-situated co-defendants, Mr. Zamzam and Mr. Minni, other courts have likewise rejected the application of the sentencing guidelines under appropriate circumstances in material support cases and imposed sentences of time served. See *United States v. Zakirov*, 2022 WL 2954161, at *6 (E.D.N.Y. July 26, 2022) (imposing time-served sentence amounting to 102 months of imprisonment); *United States v.*

*Abdullahi Yusuf*, Case No. 0:15-cr-46 (MJD), ECF 109 (D. Minn. Dec. 1, 2016) (imposing time-served sentence amounting to 20 months and 22 days, for conspiracy to provide material support to ISIL).

While the nature of the offense is indisputably serious, the decade-long period of incarceration that Umar served in Pakistan obviates any additional need for a sentence to afford deterrence or protect the public. Umar emerged from his imprisonment with a clear-eyed understanding that he wants to live a law-abiding life in the United States with his family. As noted above, he married once he was released from imprisonment in Pakistan, and is in the process of seeking lawful admission to the United States of his wife and daughter:



Nor is there any reason to distinguish Umar or impose a more severe punishment upon him than his co-defendants, Mr. Minni and Mr. Zamzam. As such, "the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct," § 3553(a)(6), weighs strongly in favor of the jointly-recommended sentence in this case.

Indeed, the government's joint recommendation for time-served has only enhanced Umar's appreciation for the U.S. legal system and for his ability to build his life here. His expressions of remorse are genuine, as are his rejection of violence and his fervent desire to put this entire experience behind him.

Under the unique circumstances of this case, we respectfully request that the Court impose a sentence of time-served, followed by a period of 20 years of supervised release (subject to early termination if appropriate in accordance with 18 U.S.C. § 3583(e)(1) and the Guide to Judiciary Policy, Volume 8, Chapter 3 § 360.20 (Early Termination)).

Respectfully submitted,

_____/s/_____
Geremy C. Kamens
Federal Public Defender for the
Eastern District of Virginia
Counsel for Mr. Chaudhry
VA Bar No. 41596
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Geremy_Kamens@fd.org